J-S56002-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DANIEL L. NUGENT AND BRYANN M. NUGENT, HUSBAND AND WIFE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| SUSQUEHANNA BANK, SUCCESSOR BY ACQUISITION TO COMMUNITY BANKS | |
| Appellee | |
| v. | No. 734 MDA 2014 |
| ROBERT R. NUGENT AND MARY E. NUGENT, HUSBAND AND WIFE | |

Appeal from the Order April 7, 2014
In the Court of Common Pleas of York County
Civil Division at No(s): 2011-SU-3429-49

BEFORE:  PANELLA, J., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED OCTOBER 07, 2014**

Appellants, Daniel L. Nugent and Bryann M. Nugent, husband and wife, appeal from the order entered April 7, 2014, by the Honorable Maria Musti Cook, Court of Common Pleas of York County, which entered summary judgment in favor of Appellee, Susquehanna Bank.  After review, we affirm.

The trial court set forth the history of this case as follows:

---

[*] Retired Senior Judge assigned to the Superior Court.

On September 6, 2011, Daniel L. Nugent and Bryann M. Nugent … filed [an] action in equity against Susquehanna Bank, successor by acquisition to Community Banks … alleging that [Susquehanna Bank] failed to forward proceeds received in conveyance of a property rightfully and equitably owned by [Appellants].

The relevant facts are as follows: Prior to November 24, 2003, Robert R. and Mary E. Nugent (herein "Parents") were the record owners of the premises located at 230 Brickyard Road, Manchester, York County, Pennsylvania (herein "Property"). On November 24, 2003, [Appellants] filed a Complaint against Parents to enforce an *inter vivos* gift of the Property and improvement to [Appellants], docketed at case number 2003-SU-5398-Y07. A *lis pendens* from the above suit was indexed against the Property on July 29, 2004. A Petition to Strike the *lis pendens* was filed on November 28, 200[6], by Parents. [Susquehanna Bank] had confessed judgment against Parents and [Appellant] Daniel Nugent to case numbers 2006-NO-1760, 1771, 1772-Y30 on May 2, 2006. [Appellant] Daniel Nugent filed Petitions to Strike these confessed judgments on January 12, 2007, to case numbers 2007-SU-150, 152, 153-Y08. Amended Petitions to open and/or strike were filed on February 26, 2007, prior to any issuance of writ of execution or required notices regarding same pursuant to the Pennsylvania Rules of Civil Procedure.

[Susquehanna Bank] appeared via counsel on January 22, 2007, before this [c]ourt and actively advocated in the oral argument in favor of striking the *lis pendens* to allow the sale of the Property so the proceeds could be given to [Susquehanna Bank] in payment of confessed judgments which were being contested by [Appellant] Daniel Nugent. This [c]ourt entered an Order on March 15, 2007, striking the *lis pendens*. [Appellant] attempted to appeal the decision to the Superior Court. Parents resisted the appeal and it was eventually quashed on June 6, 2007.

After the *lis pendens* was stri[c]ken, Parents conveyed the Property [to a third party] on June 25, 2007, as part of a three parcel conveyance totaling 27.261 acres for a total consideration of $1,000,000,00. None of the proceeds of the conveyance were escrowed pending the determination of the validity of the underlying oral *inter vivos* gift and the net proceeds of the sale

were paid over to [Susquehanna Bank] in partial satisfaction of the above confessed judgments.

On December 10, 2007, a jury found the existence of a valid oral gift of the Property to [Appellants] as tenants by the entireties by [Parents] which occurred in December 1989, and awarded [Appellants] the sum of $619,000.00 in money damages. [The damages award was later modified to $510,150.00 in favor of Appellants,] which represents money damages in substantiation of the Property given to [Appellants] by *inter vivos* gift of [Parents], since the property had been sold prior to trial.

[In their Complaint filed several years thereafter on September 6, 2011, Appellants] argue[d] that [Susquehanna Bank] is presently in possession of the money proceeds received in the conveyance of such property, which were not placed in an escrow account. [Appellants] aver that it would be improper for [Susquehanna Bank] to retain the money consideration received for the conveyance of the Property, and [Susquehanna Bank] would be unjustly enriched were it permitted to retain such proceeds. [Appellants] further aver that [Appellant] Bryann Nugent was never liable for any loans with [Susquehanna Bank], or its predecessors, and the gifted entireties property would have been unavailable to satisfy the claims of Daniel Nugent's creditors. [Appellants] requested that this [c]ourt hold [Susquehanna Bank] as trustee for [Appellants] of the money from the current owners of the Property, and that [Susquehanna Bank] be ordered to pay over to [Appellants] the amount due with interest from the date of the filing of the original action on November 24, 2003.

[Susquehanna Bank] filed Preliminary Objections on October 14, 2011, and on October 24, 2011, a brief in support thereof. On November 22, 2011, [Appellants] filed an Answer to [Susquehanna Bank's] Preliminary Objections. On April 23, 2012, the Honorable Sheryl Ann Dorney entered an Order overruling [the] Preliminary Objections.

On May 3, 2012, [Susquehanna Bank] filed an Answer with New Matter and Counterclaim. In its New Matter, [Susquehanna Bank] explains that Parents, along with their sons Daniel Nugent and Donald J. Nugent, executed and delivered to Blue Ball Bank a/k/a Community Banks (now [Susquehanna Bank]) Commercial Suretyship Agreements and Disclosures for Confession of

- 3 -

Judgment in which they all agreed to act absolutely and unconditionally as sureties for a loan Community Banks made to York Mold, Inc., and they all agreed to pledge as collateral all other property and future real property or rights to Property of the Surety. On April 24, 2003, [Susquehanna Bank had] granted to [Parents] a mortgage on the Property. [Appellants] did not object or contest that [Parents] were securing a loan with [the bank] by using the property as collateral.

[Susquehanna Bank] states that it was due to the default on the loan by York Mold, Inc. that [it] filed a Complaint for Confession of Judgment against Robert, Mary, Daniel, and Donald Nugent on May 2, 2006. [Susquehanna Bank] argues that the June 25, 2007 conveyance of the Property by Parents to the third party was executed so that the net proceeds could be paid to the [the bank] in partial satisfaction of the outstanding loan and the confessed judgments entered against Parents. [Susquehanna Bank] alleges that the payment Parents paid to [the bank] is no longer available as [Susquehanna Bank] applied the payment it received to the outstanding loan balance and in partial satisfaction of the confessed judgment. [Susquehanna Bank] also alleges that at the time Parents sold the Property it paid the proceeds to [the bank], [Appellants] took no steps to seek an imposition of a constructive trust or otherwise take steps to prevent Parents from paying the proceeds to [Susquehanna Bank] or to prevent [the bank] from dispersing the funds against the outstanding loan balance. [Susquehanna Bank] also listed several affirmative defenses.

In its Counterclaim, [Susquehanna Bank] argued that during the application and execution of the Loan Documents, [Appellants] intentionally concealed and did not disclose that they claimed to be the owner of the property based on an oral gift from Parents. Additionally, [Susquehanna Bank] claims that [Appellants'] current lawsuit against [the bank] to try to recover proceeds paid by Parents to [it] in satisfaction of a debt that [Appellant] Daniel Nugent was also contractually bound to pay represents further breach of the Loan Documents. [Susquehanna Bank] also argues that [Appellants] are attempting to misuse the legal process to try to collect the judgment … even though [Appellant] Daniel Nugent remains liable for the proceeds [Appellants] seek to recover. As such, [Susquehanna Bank] seeks a judgment in favor of all damages, costs, and attorneys' fees arising out of [Appellants'] conduct in

bringing this action and [Appellant] Daniel Nugent's breach of the Loan Documents.

On May 3, 2012, [Susquehanna Bank] filed a joinder Complaint … against [a]gainst [a]dditional Defendants/Parents Robert R. Nugent and Mary E. Nugent arguing that in the underlying litigation (case number 2003-SU-5398-Y07) [Appellants] obtained a money judgment against Parents only, therefore Parents are indispensable parties to any subsequent claim by [Appellants] seeking to enforce their judgment and Parents must be joined as [d]efendants as they are solely liable to [Appellants] for the money judgment. [Susquehanna Bank] argues that to the extent that the actions of Parents in selling the Property and using the proceeds to pay [the bank] caused the losses alleged by [Appellants], Parents are solely liable to Appellants or jointly liable with [Susquehanna Bank]. Moreover, [Susquehanna Bank] argues that Parents remain directly liable to [it] under the loan documents, suretyship agreement, confessed judgment, and equitable principals of unjust enrichment should it be determined that the proceeds from the sale of the property were improperly paid by Parents to [Susquehanna Bank].[1]

Trial Court Opinion, 4/10/14 at 2-7.

On July 9, 2013, Appellants filed a Motion for Summary Judgment, and on October 31, 2013, Susquehanna Bank filed a counter Motion for Summary Judgment. By order dated April 7, 2014, the trial court denied Appellants' Motion for Summary Judgment and entered Summary Judgment in favor of Susquehanna Bank. This timely appeal followed.

On appeal, Appellants raise the following issues for our review.

A. Whether [Susquehanna Bank] was a subsequent bona fide mortgagee entitling [it] to a superior interest in the proceeds.

_____

[1] To date, Parents have not entered an appearance in this matter.

B. Whether Appellants established their right to the equitable relief of a constructive trust based on the record.

C. Whether [Susquehanna Bank] can rely on the order lifting the *lis pendens*.

D. Whether Appellants' action was untimely or barred by election for legal damages in a previous action.

Appellants' Brief at 4 (unnecessary capitalization omitted).

We review a challenge to the entry of summary judgment as follows.

[We] may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. *See* Pa.R.C.P., Rule 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*E.R. Linde Const. Corp. v. Goodwin*, 68 A.3d 346, 349 (Pa. Super. 2013) (citation omitted).

Preliminarily, we note that Appellants' final issue raised on appeal, wherein they argue that the trial court incorrectly determined that the instant action was untimely or barred by election for legal damages in a previous action, was not included in their court-ordered Statement of Matters Complained of on Appeal filed pursuant to Pa.R.A.P. 1925(b). *See*

Pa.R.A.P. 1925(b) Statement, 5/6/14. Rule 1925(b)(4)(vii) expressly mandates that "[i]ssues not included in the Statement … are waived." We are therefore prohibited from reviewing this issue on appeal.

With regards to Appellants' remaining issues raised on appeal, we have examined the certified record, the briefs of the parties, the trial court's opinion, and the applicable law, and we find that Judge Cook ably and methodically addressed the issues Appellants presented on appeal. We find no abuse of discretion in the court's entry of summary judgment in favor of Appellee, Susquehanna Bank. Accordingly, we affirm based on Judge Cook's well-written memorandum opinion. *See* Trial Court Opinion, 4/10/14.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/7/2014

IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
CIVIL DIVISION

DANIEL L. NUGENT and        :     No. 2011-SU-3429-49
BRYANN M. NUGENT
      Plaintiffs             :

                  :

      v.                  :

                  :     Motions for Summary Judgment

SUSQUEHANNA BANK,         :
      Defendant             :

                  :

APPEARANCES:

      For the Plaintiffs:              Christian R. Miller, Esquire

      For Defendant, Susquehanna Bank:    J. Dwight Yoder, Esquire

      For Defendants, Robert R. Nugent:    *Pro se*
      and Mary E. Nugent

### OPINION

This matter is before the Court on the Motion for Summary Judgment of

Susquehanna Bank and the Motion for Summary Judgment of Daniel L. Nugent and

Bryann M. Nugent. For the reasons set forth herein, the Motion of Susquehanna Bank is

GRANTED and the Motion of Daniel L. Nugent and Bryann M. Nugent is DENIED.

2014 APR 10 AM 11: 40

JUDICIAL CENTER
YORK PA

OFFICE OF PROTHONOTARY

1

## FACTUAL and PROCEDURAL HISTORY

On September 6, 2011, Daniel L. Nugent and Bryann M. Nugent (herein "Plaintiffs") filed action in equity against Susquehanna Bank, successor by acquisition to Community Banks (herein "Defendant") alleging that Defendant failed to forward the proceeds received in conveyance of a property rightfully and equitably owned by Plaintiffs.

The relevant facts are as follows: Prior to November 24, 2003, Robert R. and Mary E. Nugent (herein "Parents") were the record owners of the premises located at 230 Brickyard Road, Manchester, York County, Pennsylvania (herein "Property"). On November 24, 2003, Plaintiffs filed a Complaint against Parents to enforce an *inter vivos* gift of the Property and improvements to Plaintiffs, docketed to case number 2003-SU-5398-Y07. A *lis pendens* from the above suit was indexed against the Property on July 29, 2004. A Petition to Strike the *lis pendens* was filed on November 28, 2008, by Parents. Defendant had confessed judgments against Parents and Plaintiff Daniel Nugent to case numbers 2006-NO-1760, 1771, 1772-Y30 on May 2, 2006. Plaintiff Daniel Nugent filed Petitions to Strike these confessed judgments on January 12, 2007, to case numbers 2007-SU-150, 152, 153-Y08. Amended Petitions to open and/or strike were filed on February 26, 2007, prior to any issuance of writ of execution or required notices regarding same pursuant to Pennsylvania Rules of Civil Procedure.

Defendant appeared via counsel on January 22, 2007, before this Court and actively advocated in the oral argument in favor of striking the *lis pendens* to allow sale of

the Property so the proceeds could be given to Defendant in payment of confessed judgments which were being contested by Plaintiff Daniel Nugent. This Court entered an Order on March 15, 2007, striking the *lis pendens*. Plaintiff attempted to appeal the decision to the Superior Court. Parents resisted the appeal and it was eventually quashed on June 6, 2007.

After the *lis pendens* was striken, Parents conveyed the Property on June 25, 2007, as part of a three parcel conveyance totaling 27.261 acres for a total consideration of $1,000,000.00. None of the proceeds of the conveyance were escrowed pending the determination of the validity of the underlying oral *inter vivos* gift and the net proceeds of sale were paid over to Defendant in partial satisfaction of the above confessed judgments.

On December 10, 2007, a jury found the existence of a valid oral gift of the Property to Plaintiffs as tenants by the entireties by Defendants which occurred in December 1989, and awarded Plaintiffs the sum of $619,000.00 in money damages. Following post-trial motions by Defendant on December 20, 2007, a trial on damages only was set to be held in the January 2009 term. On January 22, 2009, the damage verdict by the jury totaling $510,150.00 was entered in favor of Plaintiffs, which represents money damages in substantiation of the Property given to Plaintiffs by *inter vivos* gift of Defendants, since the property had been sold prior to the trial.

Plaintiffs argue that Defendant is presently in possession of the money proceeds received in the conveyance of such property, which were not placed in an escrow

3

account. Plaintiffs aver that it would be improper for Defendant to retain the money consideration received for the conveyance of the Property, and Defendant would be unjustly enriched were it permitted to retain such proceeds. Plaintiffs further aver that Plaintiff Bryann Nugent was never liable for any loans with Defendant, or its predecessors, and the gifted entireties property would have been unavailable to satisfy the claims of Daniel Nugent's creditors. Plaintiffs requested that this Court hold Defendant as trustee for Plaintiffs of the money received from the current owners of the Property, and that Defendant be ordered to pay over to Plaintiffs the amount due with interest from the date of filing of the original action on November 24, 2003.

Defendant filed Preliminary Objections on October 14, 2011, and on October 24, 2011, a brief in support thereof. On November 22, 2011, Plaintiffs filed an Answer to Defendant's Preliminary Objections. On April 23, 2012, the Honorable Sheryl Ann Dorney entered an Order overruling Defendant's Preliminary Objections.

On May 3, 2012, Defendant filed an Answer with New Matter and Counterclaim. In its New Matter, Defendant explains that Parents, along with their sons Daniel Nugent and Donald J. Nugent, executed and delivered to Blue Ball Bank a/k/a Community Banks (now Defendant) Commercial Suretyship Agreements and Disclosures for Confession of Judgment in which they all agreed to act absolutely and unconditionally as sureties for a loan Community Banks made to York Mold, Inc., and they all agreed to pledge as collateral all other present and future real property or rights to Property of the

4

Circulated 00/00/0011 01:00 PM

Surety. On April 24, 2003, Parents granted to Defendant a mortgage on the Property. Plaintiffs knew that Defendant had extended credit to York Mold, Inc. based on Parents' apparent ownership of the Property. Plaintiffs did not object or contest that Robert and Mary were securing a loan with Defendant by using the property as collateral.

Defendant states that it was due to the default on the loan by York Mold, Inc. that Defendant filed a Complaint for Confession of Judgment against Robert, Mary, Daniel and Donald Nugent on May 2, 2006. Defendant argues that the June 25, 2007 conveyance of the Property by Parents to the third party was executed so that the net proceeds could be paid to Defendant in partial satisfaction of the outstanding loan and the confessed judgments entered against Parents. Defendant alleges that the payment Parents paid to Defendant is no longer available as Defendant applied the payment it received to the outstanding loan balance and in partial satisfaction of the confessed judgment. Defendant also alleges that at the time Parents sold the Property and paid the proceeds to Defendant, Plaintiffs took no steps to seek an imposition of a constructive trust or otherwise take steps to prevent Parents from paying the proceeds to Defendant or to prevent Defendant from dispersing the funds against the outstanding loan balance. Defendant also listed several affirmative defenses.

In its Counterclaim, Defendant argued that during the application and execution process of the Loan Documents, Plaintiffs intentionally concealed and did not disclose that they claimed to be the owners of the property based on an oral gift from

5

Circulated 09/25/2014 01:20 PM

Parents. Additionally, Defendant claims that Plaintiff's current lawsuit against Defendant to try to recover proceeds paid by Parents to Defendant in satisfaction of a debt that Plaintiff Daniel Nugent was also contractually bound to pay represents further breach of the Loan Documents. Defendant also argues that Plaintiffs are attempting to misuse the legal process to try to collect that judgment against Defendant even though Plaintiff Daniel Nugent remains liable for the proceeds Plaintiffs seek to recover. As such, Defendant seeks a judgment in its favor for all damages, costs, and attorneys' fees arising out of Plaintiffs' conduct in bringing this action and Plaintiff Daniel Nugent's breach of the Loan Documents.

On May 3, 2012, Defendant filed a Joinder Complaint of Defendant Susquehanna Bank Against Additional Defendants/Parents Robert R. Nugent and Mary E. Nugent arguing that in the underlying litigation (case number 2003-SU-5398-Y07) Plaintiffs obtained a money judgment against Parents only, therefore Parents are indispensable parties to any subsequent claim by Plaintiffs seeking to enforce their judgment and Parents must be joined as Defendants as they are solely liable to Plaintiffs for the money judgment. Defendant argues that to the extent that the actions of Parents in selling the Property and using the proceeds to pay Defendant caused the losses alleged by Plaintiffs, Parents are solely liable to Plaintiffs or jointly liable with Defendant. Moreover, Defendant argues that Parents remain directly liable to Defendant under the loan documents, suretyship agreement, confessed judgment, and equitable principles of unjust

6

enrichment should it be determined that the proceeds from the sale of the property were improperly paid by Parents to Defendant.

On May 23, 2012, Plaintiffs filed a Reply to Matter and Answer and New Matter to Counterclaim, alleging several affirmative defenses. On May 30, 2012, Defendant filed a Reply to Plaintiff's New Matter to Counterclaim. On July 9, 2013, Plaintiff filed a Motion for Summary Judgment and a brief in support thereof. On July 18, 2013 Defendant filed a Contested Motion for Enlargement of Time in Which to File an Opposition Motion and Brief to Plaintiffs' Motion and Brief for Summary Judgment. On July 22, 2013, Plaintiff filed a response. On July 30, 2012, the Honorable Stephen P Linebaugh, P.J. entered an Order granting Defendant's Motion for Enlargement of Time. On July 29, 2013, Defendant filed a Response in Opposition to Plaintiff's Motion for Summary Judgment, and its Summary judgment Record. On October 31, 2013, Defendant filed a Motion for Summary Judgment a brief in support of Motion for Summary Judgment and in opposition to Plaintiff's Motion for Summary Judgment. On November 12, 2013, Defendant filed a Motion to Seal the Addendum to Its Summary Judgment Record and Substitute Its Redacted Copy and Certificate of Concurrence. On November 13, 2013, the Honorable Stephen P. Linebaugh, P.J. entered an Order Granting Defendant Susquehanna Banks Motion to Seal the Addendum to Its Summary Judgment Record and Substitute Its Redacted Copy. On November 15, 2013, Plaintiff filed the deposition transcript of Plaintiff Daniel L Nugent, its Brief in Support of its Motion for Summary Judgment, and

7

its Response to Defendant's Motion for Summary Judgment. On November 19, 2013, Defendant filed its Redacted Addendum to Its Summary Judgment Record.

On November 22, 2013, Defendant praeciped to list both Motions for Summary Judgment for one-judge disposition, requesting oral argument. Also on November 22, 2013, Defendant filed a Reply Brief in Support of its Motion for Summary Judgment. On December 17, 2013, the matter was assigned to this Court. On January 31, 2014, Defendant filed a praecipe to withdraw its request for oral argument.

## DISCUSSION

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Tayar v. Camelback Ski Corp., Inc.*, 47 A.3d 1190, 1207 (Pa. 2012) (citing Pa.R.C.P. No. 1035.2). In reviewing a case for summary judgment, the record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Id.* (citing *Toy v. Metropolitan Life Ins. Co.*, 593 Pa. 20, 928 A.2d 186, 195 (2007)).

"In response, the non-moving party may not rest upon the pleadings, but must set forth specific facts demonstrating a genuine issue for trial." *Id.* (citing *Phaff v. Gerner*, 451 Pa. 146, 303 A.2d 826 (1973)). Therefore, the failure to file a counter-

8

affidavit requires the court to ignore controverted facts appearing only in the pleadings, and to restrict its review to material filed in support of and in opposition to a motion for summary judgment, and to all uncontroverted facts contained in the pleadings and affidavits. *Shepard v. Temple Univ.*, 948 A.2d 852, 856 (Pa.Super. 2008) (quoting *Murphy v. Duquesne Univ.*, 565 Pa. 571, 777 A.2d 418, 429 (2001)). In the end, a court must grant a motion for summary judgment where the non-moving party fails to "to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof." *Id.*

However, before this Court can enter a judgment in favor of the either Plaintiff or Defendant, the evidentiary record must establish that Plaintiff or Defendant, respectively, is entitled to judgment as a matter of law and that there is no genuine issue of any material fact.

**Plaintiff's Motion for Summary Judgment**

Plaintiffs argue that Defendant's receipt of the proceeds from the sale of the Property should be held in a constructive trust for the benefit of Plaintiffs. Plaintiffs contend that to permit Defendant to retain the proceeds from the sale of the Property would unjustly enrich Defendant, as it would keep proceeds to which it never had a right to receive. Plaintiffs argue that justice requires that Defendant turn over the proceeds from the sale of the Property to Plaintiffs.

9

Circulated 09/23/2014 01:26 PM

Additionally, Plaintiffs argue that the modifications of the 2001 loan released Plaintiff Daniel Nugent from any liability associated with Defendant's loan, both through the terms of the April 24, 2003 modification documents and by Pennsylvania law. Plaintiffs argue that although Daniel Nugent was a surety of the 2001 loan, he did not sign or participate in any capacity with the modifications, starting with the initial April 24, 2004 modification. According to Plaintiffs, an inconsistency arises with the integration of the 2001 and 2003 loan documents in that Daniel Nugent is not defined as, nor does he sign as, a borrower in the April 24, 2003 documents. Plaintiffs contend that because the later loan documents are controlling, the inconsistency regarding who the borrowers are is resolved by reference to the April 24, 2003 loan, and therefore Daniel Nugent was released from any surety-ship under the 2001 loan.

Plaintiffs also argue that Daniel Nugent was released from any surety-ship by his lack of ownership interest in the York Mold, Inc. because Daniel was a gratuitous surety and a material-modification in the creditor-debtor relationship occurred without his consent. Plaintiffs reason that Daniel was stripped of his stock ownership in York Mold, Inc. through a recapitalization on January 26, 2004, which made him a gratuitous surety. In support of this argument, Plaintiffs cite *Reliance Ins. Co. v. Penn Paving, Inc.*, 734 A.2d 833, 838 (Pa. 1999), which states that "[w]here a material modification in the creditor-debtor relationship occurs without the surety's consent, a gratuitous surety is completely discharged from such surety liability." Plaintiffs argue that because Daniel did not sign or

10

consent to any of the modifications. nor was he required. Defendant inherently had knowledge that Daniel was no longer a shareholder. Plaintiffs contend that were Daniel still a shareholder, Defendant would have required his execution of the modifications along with the other shareholders.

Additionally. Plaintiff argues that even if the proceeds were to partially satisfy the debt through Defendant Daniel as a surety, the receipt of the same is still unjust because the Property was exempt from any liability attachment as joint spousal property.

Defendant, on the other hand, argues that Plaintiffs did not object or contest when Parents were securing a loan with Defendant by using the Property as collateral, a representation on which Defendant relied in approving the loan. Additionally, Defendant argues that the payment Parents made to Defendant from the sale of the Property was immediately disbursed and applied to the outstanding balances of the loans, and the proceeds were completely dissipated as of July 2007. Defendant contends that at the time Parents sold the Property, Plaintiffs knew that the Property had been sold and the funds had been fully disbursed. Defendant argues that instead of taking steps to prevent Defendant from dispersing the funds. Plaintiffs filed a Motion to Amend their Complaint against Parents to change it from an equity action that sought specific performance to an action at law that sought monetary damages.

Defendant states that on December 10, 2007, Plaintiffs were awarded a money judgment against Parents. On February 27, 2008, Plaintiffs filed a claim in Parent's

11

bankruptcy proceedings for the amount of the judgment that was entered against Parents. On December 9, 2011, Plaintiffs filed a Complaint against Defendant asking that the Court impose a constructive trust on the proceeds that had been disbursed to Defendant over four years earlier. Defendant contends that based on the undisputed facts of record in the underlying litigation between Plaintiffs and Parents along with the summary judgment record attached to Defendant's response, Plaintiffs' Complaint against Defendant and its pending Motion for Summary Judgment have no basis in fact or law, represent a misuse of valuable judicial resources, and should be dismissed as meritless as outlined below and as more fully set forth in Defendant's supporting brief.

Defendant also argues that Plaintiffs are estopped from trying to circumvent the final order and decision entered by this Court striking the *lis pendens* in order to allow the Parents to sell the Property and to pay the proceeds to the bank in partial satisfaction of the confessed judgment. Relying on this Court's Order entered on March 15, 2007, Defendant argues that Plaintiffs failed to assert any title to the property and that Plaintiffs have no cause of action against Defendant who released the Mortgage relying upon the Order.

Moreover, Defendant argues that a constructive trust cannot be imposed because Defendant does not have any trust property upon which the trust could be imposed. In addition, Defendant argues that Plaintiffs' claim for equitable relief in the form of a constructive trust imposed on Defendant is not available as Plaintiffs waived seeking

12

equitable relief and instead chose to amend their Complaint to seek monetary damages against Parents only, which they were awarded. Because Defendant was never a party to the underlying litigation, Plaintiff's claim for a constructive trust is barred as they are attempting to misuse the Court's equity jurisdiction to try to collect on a judgment entered against Parents. Defendant also argues that Plaintiffs' claims are barred by the doctrine of laches because Plaintiffs waited for four years from when the sale occurred and the proceeds were disbursed to try to impose a constructive trust. Defendant finally argues that even if Plaintiffs could state a cognizable claim for a constructive trust, it should be barred because Plaintiffs come before this Court with "unclean hands" in that they allowed Defendant to extend significant amounts of credit to York Mold, Inc. knowing that Parents had represented they owned the Property, Defendant extended credit based on the Property serving as collateral for the loans, and Plaintiff Daniel Nugent further entered into a suretyship agreement.

"A constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Chambers v. Chambers*, 406 Pa. 50, 54-55, 176 A.2d 673, 675 (1962) (citing *Gray v. Leibert*, 357 Pa. 130, 135, 53 A.2d 132, 135). Such a trust may arise where there is a breach of a confidential relationship by the transferee, or it may arise out of circumstances evidencing fraud, duress, undue influence or mistake. Restatement, Trusts, Sec. 44 (a), 44(b).

13

Justice (then Judge) Cardozo, best described the use and purpose of a constructive trust in Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378, 380-381, wherein he stated: 'A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. * * * A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief.

*Chambers v. Chambers*, 406 Pa. 50, 54-55, 176 A.2d 673, 675 (1962).

In this case, Plaintiffs argue that the proceeds held by Defendant from the sale of the property are subject to a constructive trust for the benefit of Plaintiff, and therefore summary judgment should be granted in their favor. However, due to the circumstances and facts surrounding this case, we find that the imposition of the constructive trust is improper and deny Plaintiff's Motion for Summary Judgment. We recognize that in a separate cause of action, a jury awarded Plaintiffs damages in the amount of $510,105.00 to be paid by Parents in light of the finding that there was a valid *inter vivos* gift by Parents to Plaintiffs in 1989. However, that decision was entered against Parents, not Defendant in this case. Plaintiffs cannot be allowed to circumvent the judicial system to seek the imposition of an equitable remedy in an attempt to enforce a legal remedy based on the same factual situation entered against Parents that Plaintiffs have been unable to collect.

Additionally, *lis pendens* is notice to the world that a cloud over the title to a property exists. *Janus Mgmt. Servs., Inc. v. Schlessinger*, 2002 PA Super 312, 810 A.2d

14

637, 642 (Pa. Super. Ct. 2002). "Once the *lis pendens* is stricken by a court, that is equally notice to the world that there is no longer a valid claim on the title, no matter the merits of the underlying action." *Id.* (citing *Dice v. Bender*, 383 Pa. 94, 117 A.2d 725 (1955)). This Court's decision to strike the *lis pendens* revoked any indication that there was a cloud over the title, and gave Parents reason to proceed with closing the property so they could satisfy the defaulted loan obligation incurred by York Mold, Inc. for which the Property was put up as collateral. Subsequently, Defendant, having been forwarded the proceeds of the sale of the Property and having no notice of any other impediments on the title of the property as a result of the striking of the *lis pendens*, applied the funds to the outstanding debt accrued by York Mold, Inc. As such, there is no indication that Defendant was unjustly enriched, as they were forwarded proceeds from the sale of the Property to satisfy a debt incurred by York Mold, Inc., for which the parties agreed to use the Property as collateral. Moreover, there is no evidence of a breach of a confidential relationship by the transferee or any circumstances evidencing fraud, duress, undue influence or mistake. Indeed, the only indication of any fraud in this case, is Plaintiffs failure to claim any title to the Property at any time prior to the signing of the loan documents with Defendant, including in their financial statements provided to Defendant.

For these reasons, we DENY Plaintiff's Motion for Summary Judgment.

15

**Defendant's Motion for Summary Judgment**

1. **Plaintiffs have failed to satisfy the elements for imposing a constructive trust against Defendant.**

Defendant first argues that Plaintiffs have failed to satisfy the elements for imposing a constructive trust against Defendant. Defendant contends that it was not unjustly enriched when it received the proceeds from the sale of the Property because it had a superior interest in the Property based on a previously recorded mortgage. Defendant argues that pursuant to 21 Pa.C.S.A. §§ 351, *et seq.*, Defendant has superior interest in the Property and that Defendant never had title to the Property and the proceeds were disbursed to Defendant to satisfy the loans secured by the mortgage, not for the benefits of Plaintiffs.

Plaintiffs argue that the amount of the mortgage recorded by Defendant was $58,775.00, in the form of a personal loan to Parents. The sale of the Property netted $896,955.15. Plaintiffs argue that the only superior interest, adopting Defendant's argument, was the $58,775.00 to Parents leaving a balance of $838,180.15 that does not receive the superior title protection afforded by the mortgage. Plaintiffs also argue that Parents had no interest in the Property, as it has been gifted to Plaintiffs, and therefore could not transfer any interest in the Property.

As stated above, "[a]constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Chambers v. Chambers*, 406 Pa. 50,

16

54-55, 176 A.2d 673, 675 (1962) (citing *Gray v. Leibert*, 357 Pa. 130, 135, 53 A.2d 132, 135). A constructive trust "is not really a trust at all but rather an equitable remedy." *Buchanan v. Brentwood Federal Sav. & Loan Assoc.*, 320 A.2d 117, 126 (Pa. 1974). Thus, "[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him to a trustee." *Id.* at 127 (citation omitted). Such a trust may arise where there is a breach of a confidential relationship by the transferee, or it may arise out of circumstances evidencing fraud, duress, undue influence or mistake. Restatement, Trusts, Sec. 44 (a), 44(b). "To introduce the issue of constructive trust a plaintiff must allege that the putative trustee had legal title to the property, and that were he to retain it, he would be unjustly enriched." *Buchanan* supra at 127.

As discussed above, we recognize the jury award entered in Plaintiff's favor against Parents concluding that there was a valid *inter vivos* gift of the Property to Plaintiff's by Parents sometime in 1989. However, we find that Defendant is a subsequent *bona fide* mortgagee. As such, the Pennsylvania Recording Statute applies and states that:

> All deeds, conveyances, contracts, and other instruments of writing wherein it shall be the intention of the parties executing the same to grant, bargain, sell, and convey any lands, tenements, or hereditaments situate in this Commonwealth, upon being acknowledged by the parties executing the same or proved in the manner provided by the laws of this Commonwealth, shall be recorded in the office for the recording of deeds in the county where such lands, tenements, and hereditaments are situate. Every such deed, conveyance, contract, or other instrument of writing which shall not be acknowledged or proved and

17

recorded, as aforesaid, shall be adjudged fraudulent and void as to any subsequent bona fide purchaser or mortgagee or holder of any judgment, duly entered in the prothonotary's office of the county in which the lands, tenements, or hereditaments are situate, without actual or constructive notice unless such deed, conveyance, contract, or instrument of writing shall be recorded, as aforesaid, before the recording of the deed or conveyance or the entry of the judgment under which such subsequent purchaser, mortgagee, or judgment creditor shall claim. Nothing contained in this act shall be construed to repeal or modify any law providing for the lien of purchase money mortgages.

21 P.S. § 351 (West). The primary object of recording deeds as stated by the Supreme Court is "to give public notice in whom the title resides so that no one may be defrauded by deceptious appearances of title. *Salter v. Reed*, 15 Pa. 260. *Mancine v. Concord-Liberty Sav. & Loan Ass'n*, 299 Pa. Super. 260, 264, 445 A.2d 744, 746 (1982).

Given the timeline of events in this case, Defendant became a *bona fide* mortgagee once it recorded its mortgage against the property on June 6, 2003. At that time, Defendant had no notice of Plaintiffs' interest in the Property, nor could it have especially since Plaintiffs' never claimed an interest in the Property on its financing applications and Parents maintained in their loan applications that they owned the Property. Additionally, Plaintiffs did not file their litigation against Parents until November 24, 2003, after Defendant recorded its mortgage. Moreover, contrary to what Plaintiffs argue, the central question is whether Defendant knew of the *inter vivos* gift at the time they extended credit to Parents in 2001 and extended and secured it via the Mortgage on the Property in June of 2003, not at the time the property was sold in 2007. Applying the Recording Statute to these facts, any interest Plaintiffs claim to have had in the Property by virtue of the oral gift

18

that was not reduced to writing, acknowledged, and recorded prior to Defendant's mortgage is void as to Defendant as a subsequent *bona fide* mortgagee. 21 P.S. § 351; *see also Merrill v. Hanley*, 340 A.2d 546 (Pa. Super. 1975).

This also resolves the arguments Plaintiffs advance that the Property was exempt from liability attachment because it was joint spousal property, because Plaintiff was no longer a surety due to his lack of agreement and signature to the loan modifications, and because Plaintiff Daniel Nugent became a gratuitous surety when he was divested of his ownership interest in York Mold, Inc. Regardless of Plaintiff Daniel Nugent's status as a surety or the status of the property as allegedly joint marital property, the fact that Plaintiffs claim on the property is void as to Defendant under the Recording Statute, the Property was not Plaintiff Daniel Nugent's to put up as collateral, nor could he prevent it from being used as collateral if the parties defaulted on the loans or mortgage. At the time the parties entered into the loan agreement, Defendant had no notice that Plaintiffs claimed any interest in the Property and were lead to believe that it was Parents who were posting the Property as collateral due to their ownership of the Property.

Additionally, we do not find that Defendant was unjustly enriched when it received the proceeds from the sale of Property based on the duly recorded mortgage. Plaintiffs' money judgment against Robert and Mary does not alter the fact that Plaintiffs' interest is void as to Defendant's prior recorded mortgage.

As to Plaintiff's argument that the superior title only applied to the $58,775

19

personal loan made to Parents, we find that Parents offered the Property as security not just for the $58,775 Defendant extended to Parents for the purpose of paying off "existing arrearages of interest and finance charges which have accrued on the Loans and the Line of Credit as a result of Borrower's defaults...", but also to secure all other sums recoverable under the existing loans. To support this conclusion, we point to the recorded mortgage which cross references "the Loan Documents, the Note, the Loan Agreement" to explain that the recorded mortgage secures all loans and debts of Parents. Susq SJ, pp. 240-241.

As to Plaintiffs argument that Parents no longer had the ability to convey an interest in the Property as they no longer had any interest themselves, this type of situation is precisely what the recording statute was enacted to resolve, and its application to this case resolves any issues as to Parents ability to convey the Property.

Next, Defendant argues that Plaintiffs' request for the imposition of a constructive trust against Defendant fails as a matter of law because Defendant never had legal title to the Property and was never under any obligation or duty to hold the proceeds for the benefit of Plaintiffs. As stated above, "[t]o introduce the issue of constructive trust a plaintiff must allege that the putative trustee had legal title to the property, and that were he to retain it, he would be unjustly enriched." *Buchanan, supra* at 127.

Plaintiffs argue that Defendant is confusing the "legal title" aspect of a constructive trust. Plaintiffs contend that the putative trustee must have a "legal title" to

20

the property that is to be the subject of the constructive trust, which in this case are the proceeds from the sale of the Property.

Even accepting as true Plaintiffs' argument that "legal title to the property" refers to the proceeds from the sale of the Property, not the Property itself, an argument that Plaintiff did not support with any reference to case law, we repeat that Defendant was not unjustly enriched as it lawfully obtained the proceeds from the sale of the Property only long enough to disburse it to satisfy the outstanding loan and mortgage debt incurrent by Parents and York Mold, Inc.

As to the confessed judgment Defendant entered against Plaintiff, Daniel Nugent, we agree with Defendant that while it is accurate that Plaintiff Daniel Nugent personally guaranteed the loans of York Mold, Inc. by signing the suretyship agreement, Defendant's right to the proceeds from the Property was based on a duly executed and recorded mortgage by Parents as title holders to the Property. When York Mold and Parents defaulted on the loans, Defendant had the right to foreclose on the Property and had a superior interest to any unrecorded interest Plaintiffs may have had.

Defendant also argues that Plaintiffs are estopped from attempting to impose a constructive trust on money that was disbursed from the sale of Property when Defendant relied upon a prior judicial determination specifically striking the *lis pendens* thereby approving the sale of the property and the distribution of the proceeds to Defendant.

21

We reiterate our discussion above regarding the effect of the Order striking the *lis pendens* as to any claim Plaintiffs attempted to assert on the title. While it has subsequently been decided that there was a valid *inter vivos* gift of the Property, at the time of the striking of the *lis pendens*, Defendant had every right to believe and act upon the understanding that Plaintiffs' claim to the Property did not cloud the title. Any action taken by Defendant in reliance on this Court's decision, specifically releasing the mortgage against the Property as part of Parents selling the Property, was not improper and did not cause Defendant to be unjustly enriched.

Defendants argue that Plaintiff's claim for equitable relief against Defendant should be denied because they have a complete remedy at law, they waived any right to seek equitable relief, they waited for over four years from the sale of the Property to seek the imposition of a constructive trust (to the prejudice of the Bank), and they come before the Court with unclean hands.

We agree with Defendant that equitable relief is reserved for those unique and rare circumstances where monetary damages are not available, and where justice requires it. *Clark v. Pennsylvania State Police*, 436 A.2d 1383, 1385 (Pa. 1981). An action for damages is considered an adequate remedy when the amount of damages can be accurately computed or ascertained. *Id.* Here, Plaintiffs were awarded monetary damages against Parents for the value of the Property that the jury found was the object of an *inter vivos* gift from Parents to Plaintiffs. Though Plaintiffs appear unable to collect the

22

judgment from Parents, this does not constitute an unavailability of monetary damages as it pertains to the invocation of equitable remedies. As a result, Plaintiffs are not entitled to equitable relief in the form of a constructive trust.

We also find that Plaintiffs have waived any equitable relief by electing to pursue money damages against Parents. Defendant argues that in this case, Plaintiffs amended their claim in the underlying litigation to seek only monetary damages against Parents. Plaintiffs recognized that once this Court struck the *lis pendens* and allowed Parents to sell the Property to pay the bank, Plaintiffs were left only with a claim for damages. Plaintiffs never joined Defendant or the buyer of the Property in the underlying litigation, and proceeded to litigate their claims against Parents through a jury trial.

The Supreme Court, in a case factually similar to the instant case, stated that

> [b]y initiating the action in assumpsit to recover the balance of the contract price, the appellants not only manifested their belief that there was an adequate remedy at law but also precluded themselves from bringing a simultaneous action in equity to recover the property sold and an accounting of the profits derived from that property.

*Myshko v. Galanti*, 453 Pa. 412, 416, 309 A.2d 729, 732 (1973). *Myshko* involved a dispute over an alleged oral agreement related to the sale of a linen supply company owned by the plaintiffs. After the purchaser repudiated, plaintiffs filed a complaint seeking to recover the full purchase price set forth in the agreement and a separate action in equity seeking an injunction prohibiting the purchaser from continuing to do business. In this case, Plaintiffs amended their underlying claim against Parents to seek only monetary

23

damages, and subsequently filed a separate action in equity against Defendant. While both causes of action were not asserted against the same defendant as they were in *Myshko*, both causes of action were based on the same set of facts. As a result, having filed the cause of action for damages against Parents and succeeding, Plaintiffs precluded themselves from bringing an action in equity to recover for the same events.

Defendant also argues that Plaintiffs' request for equitable relief is barred by the doctrine of laches due to Plaintiffs failure to take steps to prevent Parents from disbursing the proceeds to Defendant and the fact that Plaintiffs waited over four years from when the Property was sold to seek a constructive trust against Defendant.

Plaintiffs argue that their cause of action is not barred by the doctrine of laches because they were only able to assert the present action upon final adjudication regarding the validity of the gift and ownership of the property, which occurred on January 22, 2009. That was only two and a half years before the commencement of this action on September 4, 2011. Plaintiffs argue that such a time cannot be considered undue delay, especially considering Plaintiffs had just weathered lengthy and costly litigation. Plaintiffs also argue that Defendant's claim that the money no longer exists due to its application and dissipation is erroneous because Defendant was the lender and therefore dissipated the proceeds to itself.

"Laches is an equitable doctrine that bars relief when a complaining party is

24

guilty of want of due diligence in failing to promptly institute an action to the prejudice of another." *Stilp v. Hafer*, 553 Pa. 128, 132, 718 A.2d 290, 292 (1998) (citing *Sprague v. Casey*, 520 Pa. 38, 45, 550 A.2d 184, 187 (1988)). The party asserting laches must establish "(1) a delay arising from Appellants' failure to exercise due diligence and (2) prejudice to the Appellees resulting from the delay." *Id.* at 293. The Commonwealth Court properly stated that the test for due diligence is not what a party knows, but what he might have known by the use of information within his reach. *Id.* at 294. Prejudice may be found where there has been some change in the condition or relations of the parties which occurs during the period the complainant failed to act. *Id.*

While we find that Plaintiffs decision to delay this cause of action until final adjudication in the underlying case and the subsequent two and a half year time before Plaintiffs filed the instant action does constitute a lack of due diligence, Defendant in this case has not been prejudiced by the resulting delay. To the contrary, our decision to grant Defendant's Motion for Summary Judgment is, in part, based on the fact that the substantial lapse of time between the disbursement of the sale proceeds to Defendant and the instant cause of action for constructive trust allowed the proceeds to be irretrievably disbursed to cover the outstanding loan debt of Parents and, therefore, unavailable to be placed in a constructive trust. Such a lack of due diligence by Plaintiffs to bring the instant cause of action, in effect, aided Defendant in succeeding in its Motion for Summary Judgment. Thus, we find that the doctrine of laches has not been violated in this case.

As to Defendant's final argument, that Plaintiffs' request for equitable relief is barred by the doctrine of unclean hands, we find that there has not been sufficient evidence presented to show that Plaintiffs have engaged in "willful misconduct which concerns the particular matter in litigation" which is required for a finding of unclean hands. *Shapiro v. Shapiro*. 415 Pa. 503, 507, 204 A.2d 266, 268 (1964)

For the reasons stated above and for the lack of any genuine issues of material fact, we GRANT Defendant's Motion for Summary Judgment.

## CONCLUSION

We deny Plaintiffs' Motion for Summary Judgment on the grounds that the imposition of a constructive trust is improper in this case. While Plaintiffs' have been found to be the recipients of an *inter vivos* gift of the Property and have been awarded damages in the amount of $510,105.00, that decision was entered against Parents, not Defendant in this case. Additionally, Parents decision to sell the Property to a third party and forward the proceeds of the sale to Defendant in partial satisfaction of the defaulted loans and confessed judgments against Parents and York Mold, Inc. was the result of this Court's decision to strike the *lis pendens* and not an attempt by Defendants to be unjustly enriched.

We grant Defendant's Motion for Summary Judgment because we find that

26

Defendant was a subsequent *bona fide* mortgagee who had no notice of Plaintiffs' interest in the Property at the time it recorded the mortgage, which incorporated any prior loans documents, loan agreements or notes. Additionally, because Defendant's right to the proceeds from the Property was based on a duly executed and recorded mortgage by Parents as title holders to the Property, Plaintiffs argument that the sale of the property and disbursement of the proceeds was improper because the Property was joint marital property and because Plaintiff Daniel Nugent was no longer a surety, is invalid.

BY THE COURT,

MARIA MUSTI COOK, JUDGE

27